UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SIERRA CLUB,

      Plaintiff,

    v.

MICHAEL MORGAN and JAY
EHRFURTH,

      Defendants.

Case No. 07-C-0251-S

Hon. John C. Shabaz

---

## AMENDED CONSENT DECREE

---

WHEREAS, Sierra Club ("Plaintiff") brought this action against Michael Morgan, Jay Ehrfurth, John Wiley and Kevin Reilly, pursuant to Section 304 of the Clean Air Act (the "Act"), 42 U.S.C. § 7604, for declaratory and injunctive relief for certain alleged violations of the Act and its implementing regulations, which regulate air pollution emissions from the Charter Street Heating Plant located in Madison, Wisconsin ("CSHP"); and

WHEREAS, on November 7, 2007, the Court entered an order dismissing the case against Defendants Wiley and Reilly; therefore, for the purposes of this Amended Consent Decree, the term "Defendants" applies to remaining Defendants Morgan and Ehrfurth, not to Wiley and Reilly; the term DOA refers to the Wisconsin Department of Administration, "UW" refers to the University of Wisconsin – Madison

and University of Wisconsin System; the term "Parties" refers collectively to Sierra Club, Morgan, Ehrfurth, DOA and UW; and

WHEREAS, on November 7, 2007, the Court entered an order on liability finding certain projects at boilers 1, 2, 3 and 4 at CSHP to be major modifications pursuant to 42 U.S.C. §§ 7475, 7479, 7661a and Wis. Admin. Code §§ NR 405.02(21), NR 405.07, and NR 405.08; and

WHEREAS, the Parties agree that settlement of this action is in the best interest of the Parties, the State of Wisconsin and the public, and that entry of this Amended Consent Decree, without further litigation, is the most appropriate means of resolving the matter; and

WHEREAS, the Parties recognize that this Amended Consent Decree has been negotiated in good faith and at arms' length and that this Consent Decree is fair, reasonable and consistent with the goals of the Clean Air Act; and

WHEREAS, the Parties desire to settle all matters by Amended Consent Decree and avoid the costs, delay and uncertainty of further litigation; and

WHEREAS, the Parties have consented to entry of this Amended Consent Decree without trial of any issues; and

WHEREAS, the Parties have agreed by this Amended Consent Decree to implement, to the extent applicable and within their authority, the document entitled, "State of Wisconsin Heating Plant Environmental Improvement Agreement," attached hereto as Exhibit A and incorporated herein by reference, and to interpret this Amended Consent Decree consistent with that document to the extent applicable; and

2

WHEREAS, the University of Wisconsin – Madison has commenced and will join with Sierra Club in promoting an energy conservation campaign that includes automatic computer shutdown, incandescent lightbulb replacement, motion sensor lighting, comprehensive recycling, and transportation demand management.

WHEREAS, the United States Environmental Protection Agency Administrator and the United States Attorney General have had an opportunity to review and comment on this Amended Consent Decree, pursuant to 42 U.S.C. § 7604(c)(3), and have no objection to this Amended Consent Decree;

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED:

## JURISDICTION, VENUE AND APPLICABILITY

1.      The Parties to this Amended Consent Decree are Sierra Club, Michael Morgan, Jay Ehrfurth, DOA and UW.

2.      This Court has jurisdiction over this action, the subject matter herein, and the Parties consenting hereto pursuant to 42 U.S.C. § 7604(a) and 28 U.S.C. § 1331. Venue is proper under 42 U.S.C. § 7604(c)(1) and 28 U.S.C. § 1391.

3.      Upon entry by the Court, the provisions of this Amended Consent Decree shall apply to and be binding upon the Parties and on the Parties' successors and assigns.

4.      The Parties consent to entry of this Amended Consent Decree without further notice.

## DEFINITIONS

5.      For purposes of this Amended Consent Decree, the following definitions shall apply:

(a)    "Capitol Heat and Power" means the plant located at 624 East Main Street, Madison, Dane County, Wisconsin.

(b)    "Clean Air Act" means the federal Clean Air Act, 42 U.S.C. §§ 7401-7671 and its implementing regulations.

(c)    "Charter Street Comprehensive Feasibility Study" or "CFS" means the study by the Wisconsin Department of Administration and University of Wisconsin, identified in paragraph 1 of Exhibit A, attached.

(d)    "Charter Street Heating Plant" or "CSHP" means the facility located at 117 N. Charter Street, Madison, Dane County, Wisconsin.

(e)    "Continuous Emission Monitor" or "CEM" means a system for continuous data collection and reporting of emissions and which meets the specifications set forth in Wis. Admin. Code § NR 439.095(6).

(f)    "Defendants" means Michael Morgan, in his official capacity as the Secretary of the Department of Administration, and Jay Ehrfurth, in his official capacity as the Chief Power Plant Engineer, and their affiliates, successors and assigns.

4

(g)     "Defendants, DOA and UW" means the Defendants, DOA and UW collectively in concert with one another.

(h)     "DNR" means the Wisconsin Department of Natural Resources.

(i)     "DOA" means the Wisconsin Department of Administration.

(j)     "Fleet-wide Comprehensive Feasibility Study" means the study by the Wisconsin Department of Administration and University of Wisconsin, identified in paragraph 9 of Exhibit A, attached.

(k)     "Force Majeure Event" is defined in Paragraph 19 herein.

(l)     "Plaintiff" means the Sierra Club, a non-profit corporation incorporated under the laws of California, with its principal place of business in Wisconsin located at 222 South Hamilton Street, Madison, Dane County, Wisconsin.

(m)     "PSD" means the Prevention of Significant Deterioration program in 42 U.S.C. §§ 7470 through 7479.

(n)     "UW" means the University of Wisconsin – Madison and the University of Wisconsin System.

## CHARTER STREET ACTIONS

6.     In year 2008 Defendants, DOA and UW shall begin implementing measures to reduce emissions of sulfur dioxide, nitrogen oxides, particulate matter, mercury and carbon dioxide emitted from the Charter Street Heating Plant.  In the period January 1, 2008, through April 30, 2008, Defendants, DOA and UW may not cause or otherwise allow CSHP to combust more than 38,728 tons of coal.  This four-month

limit on coal combusted represents 85% of the average amount of coal combusted at CSHP during the same four month periods in 2005 and 2006. In the period May 1, 2008, through April 30, 2009, and each consecutive 12-month period thereafter, Defendants, DOA and UW may not cause or otherwise allow the Charter Street Heating Plant to combust more than 108,800 tons of coal. This annual limit represents 85% of the average annual amount of coal combusted at CSHP during the period January 1, 2005 to December 31, 2006.

    a.  Reduction of coal use shall be achieved through any of the following measures:

        i.  Energy conservation;

        ii.  Changes to dispatching order or fuels;

        iii.  Purchase or generation of energy from renewable sources; or

        iv.  Other methods as identified by the DOA and UW.

    b.  Tire-derived fuel shall not serve as a substitute for the 15% reduction of coal.

    c.  CSHP shall not exceed the limitations of either the CSHP operating permit, or of Wis. Stat. § 285.43.

7.    No later than December 31, 2007, DOA and UW will request permit revisions to its operation permits for the Charter Street and Capitol Heat and Power facilities as described in para. 3 of the "State of Wisconsin Heating Plant Environmental Improvement Agreement" attached hereto as Exhibit A.

8.      Defendants, DOA and UW shall complete a Charter Street Heating Plant Comprehensive Feasibility Study by July 31, 2008.  In completing the CFS, Defendants, DOA and UW will develop the scoping statement, the alternatives analysis, and the final recommendations using a public participation process that mirrors that used in developing an Environmental Impact Statement.

9.      Based on the conclusions from the Charter Street Feasibility Study, Defendants, DOA and UW shall, no later than November 28, 2008 (no later than 120 days after completion of the CFS), submit to DNR an application or applications for any permits to implement the recommendations contained in the CFS.  The applications will either be for PSD permits for existing boilers 1, 2, 3 and 4, or for source(s) to replace the respective boiler(s).

a.      If Defendants, UW, and WDOA submit a PSD permit application for existing boilers 1, 2, 3, and 4, the application shall consider in analyzing BACT for each boiler, at a minimum, the technical and economic feasibility of the following technologies for the following pollutants emitted from Boilers 1, 2, 3, and 4:

| Pollutant | BACT-level Control Technology |
|-----------|-------------------------------|
| $SO_2$ | Wet FGD |
| $NO_x$ | SCR |
| PM | Baghouse (Improvements) |

Further, Defendants, UW, and WDOA shall propose to WDNR an emission rate for each boiler for $SO_2$, $NO_x$, and PM based on the maximum achievable removal efficiencies of the application of the best demonstrated performance of the control technologies listed above. DOA and UW shall not propose any pollution control methods other than those specified in the table above, unless DOA and UW demonstrate in the PSD permit application that the differing pollution control methods achieve the same or lower emission rates than the pollution control methods specified above, or demonstrate that an above-specified technology is technically infeasible, in which case DOA and UW shall propose an alternative technology that achieves the maximum achievable emission reduction for that technology. Nothing in this Amended Consent Decree shall be interpreted to prohibit DOA and UW from converting the boilers at CSHP to natural gas, provided that: 1) such change results in emission rates for CSHP for SO2, NOx and PM that are equal to or lower than emission rates based on application of the technologies to CSHP as a coal-fired boiler identified in the table above; and 2) DOA and UW apply for and obtain a federally-enforceable operating permit that includes such emission rates.

b.  If Defendants, UW, and DOA submit a PSD permit application to replace one or more of the existing boilers at the CSHP with a new

8

boiler or boilers, Defendants, UW, and DOA shall permanently retire the replaced boiler(s) and propose emission rates in the proposed application for the new boiler(s) that are at least as stringent as those that would be contained in the PSD permit application as specified in Paragraph 9.a. of this Amended Consent Decree.

c. Defendants, UW, and DOA shall install BACT controls and meet BACT-level emission limits for $SO_2$, $NO_x$, and PM for each of CSHP's existing boilers 1, 2, 3, and 4, or replace the existing boilers with new sources with BACT level controls as expeditiously as possible, given the time necessary to permit the units and install and operate the controls.

10. In any application or project at the CSHP, Defendants, DOA and UW shall not claim a creditable reduction in air emissions pursuant to the June 2007 version of Wis. Admin. Code § NR 405.02(24).

11. Concurrent with submitting permit applications to DNR, Defendants, DOA and UW will use best efforts to secure all approvals and funding necessary to develop and implement the CFS recommendations, including, but not limited to, approval from the State Building Commission and the State Legislature no later than December 31, 2009.

12. Upon receipt of all approvals necessary to implement the recommendations of the Feasibility Study, including funding, Defendants, DOA and UW shall proceed to implement the recommendations as expeditiously as possible.

## EMISSIONS MONITORING

13.     Defendants, DOA and UW shall, as soon as reasonably possible, but no later than December 31, 2008, install an ambient air emission monitor in consultation with DNR and this monitor shall be included in the operating permit application as referenced in paragraph 7 of this Amended Consent Decree. The results of the monitoring shall be submitted to DNR and shall be used in any application submitted by Defendants, DOA and UW pursuant to paragraph 9.

14.     Defendants, DOA and UW shall, as soon as reasonably possible, but no later than December 31, 2008, install Continuous Emission Monitor(s) to measure emissions of carbon dioxide, nitrogen oxides, and sulfur dioxide from the boilers 1, 2, 3 and 4 at the Charter Street Heating Plant.  The Continuous Emission Monitor(s) shall comply with DNR requirements for calibration and accuracy.  Defendants, DOA and UW, as soon as reasonably possible, but no later than December 31, 2008, shall measure emissions of particulate matter and mercury from boilers 1, 2, 3 and 4 at the Charter Street Heating Plant through an emissions monitoring program developed by Defendants, DOA and UW, Plaintiff and DNR which will be submitted with the operating permit application referenced in paragraph 7.   Defendants, DOA and UW, shall provide the results of the monitoring to the DNR as a public record no less often than every three months.

## SYSTEM-WIDE NEW SOURCE REVIEW COMPLIANCE ANALYSIS

15.     PSD Evaluation - By February 29, 2008, DOA and DNR will screen all projects at state-owned coal-fired boilers that were submitted to and required approval

10

of the State Building Commission since January 1, 1995 to determine which of these projects need further evaluation for PSD review under the federal Clean Air Act. By December 31, 2008 DOA will produce a written analysis to determine whether any of the projects identified as a result of the screening process described in the above sentence constituted major modifications under PSD. The analysis shall be consistent with the reasoning, interpretation, and application of the PSD requirements to the Charter Street Heating Plant contained in this Court's November 7, 2007 Memorandum and Order. Once complete, DOA shall submit a copy of the February 29, 2008, and December 31, 2008, analyses to Plaintiffs, DNR and U.S. EPA, and shall proceed in accordance with the requirements of paragraphs 16 through 18.

16.    Fleet-wide Comprehensive Feasibility Study. For projects identified as major modifications pursuant to paragraph 15, Defendants and DOA shall undertake a Fleet-wide Comprehensive Feasibility Study which shall be completed no later than July 31, 2009 and provided as a public document to DNR. The Fleet-wide Comprehensive Feasibility Study shall, at a minimum, include an analysis of the technical feasibility, cost effectiveness, and reliability of: a) Use of alternative fuels, including natural gas, biomass, or other renewable energy sources; b) Construction of new co-generation capacity; and c) Installation of additional air emissions controls at each facility. In completing the Fleet-wide Comprehensive Feasibility Study, Defendants, DOA and affected agencies will develop a scoping statement, the alternatives analysis, and the final recommendations using a public participation process that mirrors that used in developing an Environmental Impact Statement.

11

17.     If after the PSD Evaluation pursuant to paragraph 15, Capitol Heat and Power is identified as requiring further review in the Fleet-wide Comprehensive Feasibility Study, Defendants and DOA agree to perform the feasibility analysis for Capitol Heat and Power by January 1, 2009.

18.     For each facility identified in the PSD Evaluation and the Fleet-wide Comprehensive Feasibility Study, as provided in paragraphs 15 and 16, respectively, as having undergone one or more major modifications, Defendants, DOA and affected agencies shall submit an application to DNR on or before December 31, 2009, for a modification to that source's applicable air pollution control operating permit(s).  The application shall identify Prevention of Significant Deterioration, 42 U.S.C. § 7470, *et seq.* and Wis. Admin. Code ch. NR 405, and/or Nonattainment New Source Review, 42 U.S.C. § 7501, *et seq.* and Wis. Admin. Code ch. NR 408, as "applicable requirements" pursuant to Wis. Admin. Code § NR 407.05(4)(d)1.   Each application under this paragraph shall also provide a "compliance plan" pursuant to Wis. Admin. Code § NR 407.05(4)(h).

## FORCE MAJEURE

19.     For purposes of this Amended Consent Decree, a "Force Majeure Event" shall mean an event that has been or will be caused by circumstances beyond the control of Defendants, DOA and UW, their contractors or agents, that delays compliance with any provision of this Amended Consent Decree or otherwise causes a violation of any provision of this Amended Consent Decree despite Defendants, DOA and UW's efforts to fulfill the obligation.  Efforts to fulfill the obligation include attempting to anticipate

any potential Force Majeure Event and to address the effects of such event (i) as it is occurring and (ii) after it has occurred, such that the delay or violation is minimized. The failure of a permitting authority to issue a necessary permit in a timely fashion may constitute a Force Majeure event where the failure of the permitting authority to act is beyond the control of the Defendants, DOA or UW and the Defendants, DOA or UW have taken all reasonable steps available to them to obtain the necessary permit, including, but not limited to, submitting a permit application, responding to requests for additional information by the permitting authority in a timely fashion, accepting lawful permit terms and conditions, and prosecuting appeals of any allegedly unlawful terms and conditions imposed by the permitting authority in an expeditious fashion.

20.     In the event the Defendants, DOA or UW, claim a force majeure event, they shall give notice to Plaintiff within a reasonable time.  In the event that the parties disagree regarding a claim of Force Majeure, the parties shall attempt to resolve that dispute pursuant to paragraph 28 of this Amended Consent Decree.

21.     Subject to the provisions of Paragraphs 19 and 20 above, if a delay or violation is caused by a Force Majeure Event, such delay or violation shall not be considered a violation of this Amended Consent Decree.

<u>**EFFECT OF SETTLEMENT**</u>

22.     This Amended Consent Decree represents full and final settlement between the Parties and resolves any and all liability Defendants, DOA and UW may have to the Plaintiff for all Clean Air Act violations alleged in the Amended Complaint in this proceeding, or which the Plaintiff might have alleged against the Defendants,

DOA and UW regarding the Charter Street Heating Plant based on information in possession of the Plaintiff as of the date of signing this Amended Consent Decree.

23.     Furthermore, except as to those matters for which liability was expressly determined by the Court in its November 7, 2007 Memorandum and Order on the parties' cross-motions for summary judgment, nothing contained in Amended Consent Decree shall be construed as an admission of liability by the Defendants, DOA and UW in any proceeding now pending or hereafter commenced pertaining to the Charter Street Heating Plant or to any other state-owned coal-fired boilers;

24.     The Plaintiff reserves all legal and equitable remedies available to enforce the provisions of this Amended Consent Decree, except as expressly stated herein, and to participate in and exercise any and all legal rights in any collateral permitting or other proceeding to this Amended Consent Decree, including but not limited to the permit proceedings resulting from applications submitted by Defendants, DOA and UW pursuant to paragraphs 7, 9, 10, 16 and 18.

25.     Defendants, DOA and UW reserve all rights to defend against any effort to enforce this Amended Consent Decree and in any collateral permitting or other proceeding to this Amended Consent Decree.

## TERMINATION

26.     This Amended Consent Decree shall terminate on July 31, 2011, provided that:

     a)  DOA and UW:

1) Have obtained the required PSD permits and installed BACT at CSHP; or

2)  Have permanently retired and not replaced the coal fired boilers at CSHP; or

3) Have replaced the coal fired boilers at CSHP consistent with the provisions of paragraph 9.

b) DOA and UW have certified that they are in compliance with the Clean Air Act at the CSHP and with each of the obligations in this Amended Consent Decree; and

c) Plaintiff does not notify the Court that Plaintiff contends DOA and UW have failed to comply with any of the obligations of this Amended Consent Decree.

## GENERAL PROVISIONS

27.     The Court shall retain jurisdiction to enforce the terms of this Amended Consent Decree.

28.     In the event of a dispute between the Parties concerning the interpretation or implementation of any aspect of this Amended Consent Decree, the disputing Party shall provide the other Party with a written notice outlining the nature of the dispute and requesting informal negotiations.  If the Parties cannot reach an agreed-upon resolution within sixty (60) days after receipt of the notice, any party may move the Court to resolve the dispute.

29.    Interpretation of this agreement will be consistent with the document entitled, "State of Wisconsin Heating Plant Environmental Improvement Agreement," attached hereto as Exhibit A and incorporated herein by reference.  If there is a conflict between this Amended Consent Decree and State of Wisconsin Heating Plant Environmental Improvement Agreement, the conflict shall be resolved in favor of the former.

30.    The Parties agree that approval of this Amended Consent Decree may be achieved by the actual signature of the Parties' authorized representatives and/or attorneys, a copy or facsimile of said actual signature being valid as the original.

31.    The recitals set forth above are an integral part of this Amended Consent Decree and are incorporated herein by reference.

32.    Except as otherwise provided herein, this Amended Consent Decree cannot be amended, modified, clarified or explained, except by a writing executed by the Parties, which expresses, by its terms, an intention to modify this Amended Consent Decree and that is approved by the Court.

33.    Defendants, DOA and UW shall provide to the Plaintiff any document required by this Amended Consent Decree as soon as reasonably possible.

34.    <u>Notice</u>.  When notice is required to be given under the terms of this Amended Consent Decree, notice will be given by facsimile, electronic mail, and United States mail to the following representatives of the Parties:

For Sierra Club:

David Bender
Garvey McNeil & McGillivray, S.C.
634 West Main Street #101
Madison, WI 53703
608-256-0933 (facsimile)
bender@gmmattorneys.com

Bruce Nilles
Sierra Club
122 West Washington Avenue #830
Madison, WI 53703
608-257-3513 (facsimile)
Bruce.nilles@sierraclub.org

For Defendants, DOA and UW:

Thomas J. Dawson
Wisconsin Department of Justice
17 W. Main Street
P.O. Box 7857
Madison, WI 53707-7857
608-266-2250 (facsimile)

Cari Anne Renlund
Chief Legal Counsel
Wisconsin Department of Administration
101 East Wilson Street, 10th Floor
P.O. Box 7864
Madison, WI 53707-7864

Patricia Brady
General Counsel
University of Wisconsin Systems
1856 Van Hise Hall,
1220 Linden Drive
Madison, WI 53706

Ben Griffiths
University Legal Counsel
University of Wisconsin – Madison
361 Bascom Hill
500 Lincoln Drive
Madison 53706-1380

17

## ATTORNEY FEES

35.     The deadline for filing a motion for costs of litigation (including attorneys' fees) for activities prior to entry of this Amended Consent Decree by the Court is hereby extended until 90 days after this Amended Consent Decree is entered by the Court. During this 90-day period, the Parties shall seek to resolve informally any claim for costs of litigation (including attorneys' fees), and, if they cannot, will submit that issue to the Court for resolution.   An award of fees for activities prior to entry of this Amended Consent Decree by the Court under this paragraph does not waive any claim by Plaintiff for costs of litigation (including attorneys' fees) incurred to monitor and/or enforce the provisions of this Amended Consent Decree.

## FINAL JUDGMENT

36.     Judgment on these terms may be entered, following a 45-day comment period provided in 42 U.S.C. § 7604(c)(3) without further proceedings.

SIERRA CLUB

By Its Counsel

DAVID C. BENDER
Garvey McNeil & McGillivray, S.C.
634 W. Main St., Ste. 101
Madison, WI  53703
State Bar #1046102

MICHAEL MORGAN, in his official capacity as Secretary of the Department of Administration

By His Counsel

THOMAS J. DAWSON
THOMAS L. DOSCH
Assistant Attorneys General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53703
State Bar #1016134
State Bar #1017026

JAY EHRFURTH, in his official capacity as Chief Power Plant Engineer for the Department of Administration

By His Counsel

THOMAS J. DAWSON
THOMAS L. DOSCH
Assistant Attorneys General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53703
State Bar #1016134
State Bar #1017026

19

UNIVERSITY OF WISCONSIN - Madison

By Its Counsel

CHARLES D. HOORNSTRA
University Legal Counsel
361 Bascom Hill
500 Lincoln Dr.
Madison, WI 53706-1380
State Bar #1010601


UNIVERSITY OF WISCONSIN SYSTEM

By Its Counsel

PATRICIA BRADY
General Counsel
1856 Van Hise Hall
1220 Linden Dr.
Madison, WI 53706
State Bar #1018589

WISCONSIN DEPARTMENT OF
ADMINISTRATION

By its Counsel

CARI ANNE RENLUND
Chief Legal Counsel
101 E. Wilson St., 10th Floor
Madison, WI  53707-7864
State Bar #1018589


SO ORDERED, THIS _____ DAY OF _____, 200__.


_____

Honorable John C. Shabaz